OPINION
In this appeal, submitted on the record and the briefs of the parties, appellant, Cassorla Brothers, Inc. ("Cassorla"), appeals from the judgments of the Portage County Court of Common Pleas entered on February 9, 1999. Cassorla originally brought an action for breach of contract against Midwest Fireworks, Mfg. Co., Inc., Larry Lomaz, John Doe I, and John Doe II (collectively referred to as "Midwest"). On July 29, 1997, the trial court entered a judgment in favor of Cassorla for $64,227. The matter was appealed and, in Cassorla Bros., Inc. v. Midwest FireworksMfg. Co. Inc. (June 26, 1998), Portage App. No. 97-P-0082, unreported, (Cassorla I), this court affirmed in part, reversed in part, and remanded the case solely for the determination of the amount Midwest owed Cassorla for "Black Cat" brand of fireworks which were part of the purchase contract. Upon remand, the trial court determined that Midwest was entitled to a credit of ninety percent of the value ($38,529) of the "Black Cat" fireworks it had purchased, as opposed to a fifty percent credit it had granted Midwest in the previous judgment. The trial court also denied Cassorla's renewed motion for prejudgment interest. The following facts are relevant to a determination of this appeal.
On May 11, 1993, Midwest entered into a purchase agreement to buy fireworks from Cassorla, including "Black Cat" brand items. In June and July of 1993, Midwest received fireworks from Cassorla valued at $141,490, including $42,810 worth of the "Black Cat" brand. Cassorla invoiced Midwest for $141,490, plus ocean freight charges of $17,842. Midwest paid Cassorla a total of $73,700. Cassorla claimed a balance was due of $85,332. When Midwest failed to make any further payments, Cassorla filed suit in the Portage County Court of Common Pleas.
Midwest answered the suit asserting, among other defenses, that it was required to destroy the "Black Cat" brand fireworks because appellee was not authorized to sell this particular brand. In a letter dated July 8, 1993, attorneys representing the owner and exclusive licensee of the "Black Cat" trademark threatened to sue Midwest for its unauthorized use of the "Black Cat" trademark. Larry Lomaz claimed that Midwest was threatened with this litigation because appellee was not an authorized dealer of "Black Cat" fireworks. Midwest presented evidence of appellee's possible infringement of the "Black Cat" trademark. At trial, Lomaz testified that, in order to fend off a lawsuit, Midwest was forced to destroy more than ninety percent of the "Black Cat" brand items it had purchased from Cassorla. Midwest refused to pay for any "Black Cat" items shipped by Cassorla. In response to Midwest's arguments, Cassorla presented evidence that Midwest itself was involved in a trademark dispute with "Black Cat," but was not required (as Lomaz testified) in either case to destroy any "Black Cat" brand items.
Before Midwest destroyed any "Black Cat" fireworks it purchased from Cassorla, Lomaz testified that Midwest was able to sell approximately twenty-five cases of the "Black Cat" fireworks at retail for approximately $3,000, and another fifty cases at wholesale for $1,250 to $1,350. This represented approximately ten percent of the value of Midwest's total purchase of that brand.
On July 29, 1997, the trial court issued a judgment in favor of Cassorla for $64,227. In the findings of fact and conclusions of law issued with its judgment, the trial court found that Cassorla delivered $141,490 worth of fireworks to Midwest, including $42,810 worth of the "Black Cat" brand. The trial court determined that Midwest owed Cassorla for the freight charges totaling $17,842. However, the trial court also determined that Cassorla did not have the legal authority to sell "Black Cat" brand items. Cassorla was not a licensed distributor of the brand. The trial court found that Midwest was "threatened with possible legal action if it continued to handle the `Black Cat' brand items" received from Cassorla. The trial court found that Midwest destroyed fifty percent of the "Black Cat" fireworks (although the only evidence on the issue of what happened to the "Black Cat" fireworks not sold was the testimony from Lomaz that he destroyed ninety percent of the shipment). The trial court gave Midwest a credit of $21,405, equal to fifty percent of the value of the "Black Cat" fireworks it received from Cassorla, against the balance Midwest owed Cassorla. The trial court awarded Cassorla judgment on the balance due and judgment interest accruing from the date of the judgment entry, July 29, 1997.
Midwest appealed, and Cassorla filed a cross-appeal. Cassorla, however, did not file a brief in support of its cross-appeal. This court subsequently dismissed the cross-appeal pursuant to App.R. 18(C). The matter was subsequently remanded solely for the determination of the amount Midwest owed Cassorla for "Black Cat" brand of fireworks. This court was unable to discern from the record how the trial court determined that Midwest was responsible for fifty percent of the "Black Cat" fireworks sold to it by Cassorla. It appeared that, rather than basing this judgment on the evidence, the trial court attempted to strike a middle ground by holding each party fifty percent responsible. Upon remand, the parties briefed the issue. No additional evidence was taken. On remand, the trial court determined that Midwest was entitled to a credit of ninety percent of the value ($38,529) of the "Black Cat" fireworks it had purchased. The trial court denied Cassorla's renewed motion for prejudgment interest. From this judgment, Cassorla timely filed notice of appeal, assigning the following errors:
 "[1]. The trial court erred and abused its discretion to the prejudice of Plaintiff-Appellant in entering judgment not supported by competent, credible evidence.
 "[2]. The trial court erred to the prejudice of Plaintiff-Appellant in entering judgment contrary to the manifest weight of the evidence.
 "[3]. The trial court erred to the prejudice of Plaintiff-Appellant in allowing Defendant-Appellee a set-off or credit based upon an affirmative defense, where defendant failed to support such affirmative defense with competent, credible evidence.
 "[4]. The trial court erred to the prejudice of Plaintiff-Appellant in entering judgment contrary to established principles of law and contrary to the law of Ohio.
 "[5]. The trial court erred to the prejudice of Plaintiff-Appellant in failing to require Defendant-Appellee to carry its burden of proof upon a purported affirmative defense.
 "[6]. The trial court erred to the prejudice of Plaintiff-Appellant in failing to award prejudgment interest."
As the first five assignments of error are interrelated, we shall address them in a consolidated fashion. Cassorla contends there was no competent, credible evidence before the trial court to support the conclusion that Midwest destroyed ninety percent of the "Black Cat' fireworks it had received from Cassorla. Consequently, it argues, the trial court's conclusion was against the manifest weight of the evidence. Secondly, Cassorla argues that Midwest's claim it had to destroy the "Black Cat" fireworks to avoid litigation with the owner and exclusive licensee of the brand's trademark was an affirmative defense. As such, Cassorla argues Midwest failed to meet its burden of proof by supporting the defense with competent, credible evidence.
In C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, the Supreme Court of Ohio held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. at syllabus.
The only testimony going to the issue of how much of the "Black Cat" fireworks Midwest sold and, how much, if any, was destroyed, was provided by Larry Lomaz. He testified that approximately $4,250 of the product was sold. He testified the balance was destroyed by burying it in the ground. It was established that the value of the product Cassorla shipped was $42,810. This testimony provides the basis for the ninety percent credit the trial court granted Midwest upon remand.
Cassorla argues the testimony provided by Lomaz was incredible. Unfortunately, on this narrow issue, Cassorla offered no testimony or evidence which refuted it. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts to determine. Hollenbeck v. McMahon (1875), 28 Ohio St. 1, paragraph one of the syllabus. In this case, the trial court chose to believe Lomaz's testimony.
Cassorla incorrectly claims the set-off is an affirmative defense. Affirmative defenses are defined in Civ.R. 8(C). In reality, the defense presented by Midwest is simply that the money is not owed for the unusable portion of the shipment. Lomaz was competent to testify on the issue, and the trier of fact found his testimony credible. Under such circumstances, we will not substitute our judgment for that of the trier of fact. The testimony provided by Lomaz, if believed, sufficed to meet the burden of proof, and does support the trial court's judgment upon remand. The trial court believed his testimony. Cassorla's first five assignments of error are without merit.
In Cassorla's sixth assignment of error, it argues the trial court erred in failing to award prejudgment interest. In Cotterman v.Cleveland Elec. Illum. Co. (1987), 34 Ohio St.3d 48, the Supreme Court of Ohio held that motions for prejudgment interest must be filed after judgment and in no event later than fourteen days after entry of judgment. Id., at paragraph one of the syllabus. In the present case, Cassorla initially filed a motion for prejudgment interest on May 16, 1997, before this matter came to trial. The motion was subsequently withdrawn on June 9, 1997. The motion was not renewed within two weeks of the court's judgment of June 29, 1997. Cassorla did not raise the issue (of the lack of an award) of prejudgment interest on cross-appeal in Cassorla I. Cassorla did not renew its motion until August 21, 1998, over a year after the trial court's judgment, seven weeks after this court's judgment in Cassorla I. Thus, according to the dictate ofCotterman, supra, the issue of prejudgment interest was not properly before the trial court when Cassorla raised it. Therefore, the trial court was not in error in denying the motion. Cassorla's sixth assignment of error is without merit.
The judgment of the trial court is affirmed.
 ________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., NADER, J., concur.